and excuse me, let me turn the page. Mr. Paul. Thank you, Your Honor. Good morning. Good morning. May it please the Court. My name is Greg Paul. I'm here with Cynthia Herzo on behalf of the appellant, Gary Epple. The case concerns the Federal Railroad Safety Act, which is a whistleblower federal statute. Is it a whistleblower statute without Air 21? Or is it the incorporation of Air 21 that makes it a whistleblower statute? I believe that it would be a whistleblower statute without the incorporation of Air 21 in so much as the provision that we're talking about is a retaliation provision. Yeah, well, I mean, there's lots of retaliation provisions, obviously, throughout federal law that aren't whistleblower. I thought that the real thrust of the argument is that it's the incorporation of Air 21 that makes this more like the whistleblower statutes that use the same language that Air 21 does. That it's basically an imperimetaria argument. I think that's correct, Your Honor. Insofar as if it was a sexual discrimination or an Americans with Disabilities Act, the retaliation would be based upon a different protected activity. With respect to the FRSA or the Federal Railroad Safety Act, the complaint has to do with unsafe conditions, usually. It could also be there's other parts of the FRSA, such as a medical treatment plan and so forth, that's less so. But this particular provision has to do with unsafe working conditions. But there's no whistleblower statute, at least I couldn't find one, that uses the language that's in 2109A, right? What you really need is the stuff that's incorporated by Air 21 to make it look like the various whistleblower statutes. Yes, that is correct. So can you help me understand how these actions work? I'm looking at D3. You have 120 days where the secretary doesn't act. And then you can bring a de novo action in district court and then an appeal to us? I believe it's 210 days. Oh, sorry, 210, excuse me. Transpose the numbers. So that's different than if the secretary does act, right? Because if the secretary does act, then you don't go to district court. The complainant or the employee has the option of either staying in the administrative process or kicking it out, is what they call it. And when they kick out under four, do they come to the circuit, right, not to the district court? No, they come to the district court. There's a jury trial option. So if the secretary acts, you can go to district court. If the secretary doesn't act, you can also go to district court? That's correct, so long as there is not a final decision that was not appealed. But in this case, you have a D3 de novo action. Correct. So why does it make any sense to use the Air 21 standards since those are all about how the secretary does the investigation? It's, of course, the burden of proof. I think there are some whistleblower statutes that stay exclusively within the administrative process and others allow this kick out. I think the kick out really has to do with efficiency and time. If an employee wants to stay in that process, they can. But if the agency can't act because they're overworked or et cetera, you just have an option to get things going quicker. So I understand why Congress would make the policy decision. Mine is a textual argument or textual question, I should say. I'm trying to understand the way D3 works with respect to this kick out of D4. The way D3, the text of D3 reads is that there are two very distinct routes. One of them goes administratively through the secretary. The other goes through the federal court system. And you obviously are in the second category through the federal court system. And if you go through the federal court system, you bring an original action, right, at law and de novo review in an appropriate district court that would have jurisdiction. And since that's what you did or your client did, then it seems like Air 21 doesn't apply because if you go back to the preceding paragraph, it literally, the burden of proof says an action under D1 shall be governed by Air 21. So as a textual proposition, I'm wondering why we talk about Air 21 in an original D3 action brought in district court, textually for the provision I just gave you, but also just as a matter of understanding the way Air 21 works, given that it is about administrative investigation, not about the standards of proof that will apply otherwise. I have not heard of that argument before. It certainly was not raised in this case. The Halliburton case is obviously, well, not obviously, but it was a Sarbanes-Oxley case five years ago. Since that time, we're aware of the Judge Stagg case in Shreveport, and two judges in Galveston had applied the Air 21 burden at the district court level of applying that burden of proof. To my knowledge, that argument has not been raised. I'm not familiar with that, and it certainly wasn't raised in this case. But ---- Well, if after, on rebuttal, you come up with a response to it, how it would work textually, that we would apply Air 21 in a D3 action, which the statute suggests is very different than a D1 action, I would be most excited to hear it. Yeah, of course. And if that's important to the Court, I would appreciate an opportunity to file supplemental briefs on that issue if that becomes important. The ---- when the Fifth Circuit precedent in Halliburton, I think the facts are somewhat instructive insofar as Mr. Menendez was the complainant or the plaintiff or the appellee, I suppose, at the Fifth Circuit level. But he had raised questionable accounting practices, okay? And that he had filed an internal complaint with Halliburton. He had also filed it with the SEC. But what happened was that Mr. Cornelison was the general counsel, and he had sent out an email, essentially what sounds like a litigation hold, but he named Mr. Menendez in that email to approximately 14 or 15 people, including Mr. Menendez and his coworkers. So what's important, I think, in that case is that Mr. Cornelison, the general counsel, there was no discussion. It was not important that he had an intent to cause harm. He did not intend by sending that email to harm Mr. Menendez or to get him fired or to have him quit. He ultimately quit. And the Fifth Circuit addressed not only the contributing factor in the SOX, but also what is an adverse employment action. I think that were the two main points. But it's instructive because the Fifth Circuit had said that it's of no moment whether there was a wrongfully motivated causal connection. And that's at Halliburton at 263. The full citation is 771 F. 3rd, 254, 263, Fifth Circuit, 2014. So whether the general counsel intended to harm is kind of critical because that all has to do with the retaliatory intent. What matters in a situation like this, whether it's the FRSA or the other whistleblower statutes, is that the protected activity is linked to the harm or the adverse employment action, not the intent. And where I think some of the other circuits have gone astray, and there's even a reference in the Kudak case to the cat's paw theory borrowed from Title VII, is knowledge. So I think there's quite a bit of confusion between these different laws, between knowledge and intent. I think it goes without saying, and it certainly would be a strong case for the defendant, to argue that if the decision maker or decision makers did not have knowledge of the protected activity, that's a pretty good defense for them. But that's far different than requiring a retaliatory motive or intent. I mentioned the couple of district courts. And to my knowledge, other than the present case and the Epple case, I'm not aware of any other federal court within the Fifth Circuit that has applied the standard that would require retaliatory intent. Now, a lot of these things aren't published, so it's possible, but to my knowledge, that hasn't happened. And I think for good reason. The Arejo case from the Third Circuit addresses the history of the FRSA, why it was amended in 2008 to offer greater protection than the collective bargaining agreement procedures, had to do with discipline. They discuss financial motivations for discouraging claims under the Federal Employers' Liability Act. As the court may be aware, the railroaders and the sea, people that work in the sea industry, maritime industry, don't have workers' compensation. There's a separate law under the Federal Employers' Liability Act and Jones Act. So that's a really rich and important part of the legislative history about why this law was passed. And it explains why, at first blush, it seems really to the employee's advantage, quite frankly, to have this law, to not have to prove intent. But what's different about this law than Title VII or the ADA or the ADEA, is that the burden shifts in the form of an affirmative defense. So in any case, what the employer has to do is show that they would have done it anyway. And that's a pretty powerful weapon that they have, one that the court didn't reach in the present case. But that explains why that, at first blush, I think that burden seems kind of light to the plaintiff. But it was done intentionally so by Congress to allow, I think, a case to get to the merits, to encourage whistleblowers to raise issues about safety in the workplace so that, one, those are raised so they can be better for the public safety and all of us, but, two, to allow it to move over if there really was a connection, if there was a contributing factor, to get it to the merits and get relief. Without that, by encouraging or by requiring, not encouraging, retaliatory intent, that opens the door to what we see in a lot of employment cases is a summary judgment. We see cases not necessarily decided on the merits. And I think that's what Congress was trying to intentionally do. How do you square your position with the use of the term discriminate? So it's, right, of course the FRSA statute states discriminate. And I think that in other statutes. I believe that's the word that does not appear in these other settings that you're trying to analogize. In the other statutes? Right. Am I mistaken? In the areas that you're analogizing, does the word discriminate appear there as well? I don't know of all 13 of those different statutes. I can't say for certain, Your Honor. I apologize for that. I don't think they do. You can tell me if I'm wrong. Yeah. I can double check on that and I can address that in the rebuttal. But how do I square that with the word discriminate? So I think it's because of that burden shifting, because it goes to whether the employer have done the action anyway, that it falls back. Typically, in Title VII cases, discriminate would require and does require some level of intent, whether that's direct evidence or indirect evidence. Because this burden shifting is different, it just simply doesn't require the intent. Normally, when the Supreme Court is saying that there's no intent required, so, for example, in a disparate impact case, for example, on the other side, one of the briefs points out, they look for this results language like they did in the Fair Housing, the FHFA, they did in Title VII, et cetera. Do you have any sort of results or effects language, even if Air 21 applied, that would apply either in Air 21 or in the FRSA itself? Sure. That's a great question. And the closest I think we can come is the statute says, or let me get the exact language, it says in any other way discriminate. So it says terminate and so forth. But the FRSA statute says in any other way discriminate. What I think other statutes say otherwise. So it's a little broader language. But I'm not here to argue that there is a disparate impact positive action under the FRSA. I think that that case stands for the proposition that the Supreme Court and Congress has recognized there are some statutes that permit a showing of discrimination or retaliation without intent. But I cannot point to any language other than in any other way discriminate that would support that argument. I think that Supreme Court case, though, was specific to a disparate impact analysis and kind of just a different creature altogether than a retaliation statute. The Fifth Circuit in Halliburton, of course, rooted its decision in the Allen v. Administrative Review Board, which is 514F3-468 in 2008.  And that, again, that case turned on, had to do with a publicly traded funeral home. They just found that there wasn't protected activity. But, again, that discussion of the burden-shifting AR-21 statute and not requiring intent goes, the precedent establishes even before the Halliburton case. The Murano case, of course, is where this all began, and that was the whistleblower, the WPA, the Whistleblower Protection Act, dated back in 1989. And that statute specifically eliminated what they called reprisal or the motive factor. And so that's really the origin of these sibling statutes that intentionally removed that showing. The parties here have both filed the Rule 28J letters, and I wanted to address that briefly. So what the Ninth Circuit did in the Frost case was, I think, specifically say that there was not a separate showing of intentional discrimination. So I think that's helpful to our precedent. I anticipate, and we'll address on rebuttal, that I anticipate the appellee will argue that it's sort of in there, right, that there is a showing of intentional discrimination, it's just in the contributing factor. But that's not what the statute says. And I also think in this case, when we look at the actual one-page decision from the judgment, it states, and this is at record 2470, that the plaintiff had failed to establish retaliatory motive and causation. So clearly the district court, in our view, erred by requiring those two separate elements. Okay. We have your argument, and you have time for rebuttal. Thank you, sir. Mr. Neal. Good morning. May it please the Court. I will tell you in a moment why this doesn't matter, but I'll start with the whistleblower versus retaliation label. This is clearly a retaliation statute, and it's in particular a retaliation statute when you look at the type of action we have here, which is under A-4, and I know that these are not as common these days, but I'm sure Judge Jones remembers the day when Texas was full of what were called then 8307C cases, and now they're Chapter 451. It's a workers' compensation retaliation. That hurts. Well, me too, so I knew you would recall as well. It's a workers' compensation retaliation claim. And now whether you label it whistleblower or retaliation doesn't matter. You still have to look and see what the statute requires. And it's true there are other aspects of the statute that sound more like whistleblower statutes, but courts have gotten astray by this incorporation of Air 21 for parts of some of these statutes, and I'll say I don't think most of the courts don't spend a lot of time trying to look at all of these statutes. They're all different. They all have different backgrounds, different purposes, and so you've got courts that have said the same thing this Court indicated in the Halliburton case, which I'll talk more about, circuits that have said the same thing, but then they've also said that retaliatory motive is required under the FRSA. So the problem that comes up is the plaintiffs want to focus laser-like on Air 21 and this contributing factor discussion, which is fine if you're in a statute that does incorporate it and you're in the part of the process that incorporates it, but you can't do that in a way where that's the only thing you look at. And the FRSA has its own causation provision. It's due in whole or in part, and the FRSA also has other language that describes what employers are prohibited from doing. Are you taking the position that the Air 21 standards do not apply when in federal court? Because the way the statute looks structurally is that the Air 21 standards are incorporated to D1 when it's in front of the Secretary along with the Air 21 affirmative defense, and then when it's in federal court, this burdens of proof only applies, doesn't seem to apply to the D3 action, that is to the de novo action. Yeah. We have not, we have alluded to that in our briefing. We haven't made a big issue of it because I think in this particular case it substantively doesn't matter, but I think you're absolutely right. I think the D3 reference to what is incorporated where it refers to an original action at all or equity for de novo review is not the part that incorporates the Air 21 standards. And so in that instance, you would simply look at the FRSA and, you know, as its own statute and say it says, well, it prohibits employer retaliation due in whole or in part to these protected activities. And that's clearly a discrimination statute. Now, it is common in these cases because there are so many of them and so many of these different statutes out there for parties and courts, as you just did here, still use the contributing factor reference. And in terms of what the causation standard is, I don't know that there's really any difference between contributing factor and due in whole or in part. And we've always acknowledged it is a lower standard. And that lower standard is what Congress gave to employees. There are cases that talk about this being a hard statute for employers, and it is. But it's the contributing factor, if you look at that, or the due in whole or in part causation standard that makes it difficult. It's not even one step below that where we're not even going to require any type of a showing of retaliatory motive. Now, either way, whether Air 21 is incorporated or not, because you don't focus only on the contributing factor discussion, you have to look at what is in the other part of the FRSA. I would say, regardless of the outcome of that, there's still a requirement of retaliatory intent. That's the employer-prohibited conduct. That's what the employee has to show. The causation, whether it's contributing factor or due in whole or in part, is a separate matter. And Armstrong, the Seventh Circuit case in Armstrong, did a very good job in making that point. And I'll tell you that there are a lot of these cases, and parties and even employees, we need some guidance from this Court on how you're going to come out on this. And I would encourage you, when you do that, to focus on the distinction between the causation standard and what is the employer-prohibited conduct. And because it's so important, I'm going to belabor the point just a little bit and talk about an analogy that we make in our brief. Between Title VII and the motivating factor standard. In Title VII, you've got the causation standard that was in place for a number of years, and then in 1991, Congress amended the statute to add 2000E-2M, the motivating factor standard. And that motivating factor standard, actually, when you compare that to the contributing factor language in Air 21, it reads very similarly. It talks about whether, when the complaining party demonstrates that race, color, one of the protected characteristics, quote, was a motivating factor. And no one came along after 1991 and said, oh, well, you know, now all discrimination cases are unintentional discrimination cases. We don't have to prove intentional retaliation. And I'll reference a case here that talks about this. We didn't cite this in our brief. It's the Nassar case, which is out of the circuit, the UT Southwestern case, that talks about whether under Title VII retaliation claims have to be or are subject to that motivating factor standard. And the Supreme Court made it very clear, look, motivating factor, that's a causation provision, and it refers to language specifically in the statute and calls that the language of what is prohibited, the prohibitory language, and makes a point of distinguishing those two things. And that's what this court should do, too. That's what Armstrong did. Your point is either two completely different elements. Right, right. How you choose to fill in one really doesn't impact. Exactly, and that's where the other side really runs astray. The principal fault in Mr. Epple's argument, and we have these around the country, the principal fault on all sides is the failure to distinguish between what part of the statute says what is prohibited and what part of the statute says how much of the evidence is needed. What's the causation standard? You've got the type of evidence that needs to be presented and the quantum of that evidence. Now, that doesn't mean, touching on this Frost case that was mentioned, that doesn't mean that we're saying you've got to have one bucket of evidence over here and you've got to have another bucket of evidence over here. It's most of the time going to be the same evidence, just like it is in Title VII, and that's where I think the Ninth Circuit ran astray in talking about the separate requirement. I mean, we were never arguing in that case that there was some separate requirement in the sense of having a bucket of evidence of retaliation and a bucket of evidence of causation. It's the same thing, and all we're saying is that you've got to show that the employer, that causation, when the employer took that action that is alleged to be retaliation, it took it with the, so you've got causation, but the employer took that with the requisite state of mind, which is retaliatory motive, which means consciously holding that protected activity against the employee, not some unintentional discrimination or circumstances are such that you could say that there's a factual connection between the protected activity and the adverse action. And that comes up sometimes where, say, an employee would have an injury, and the employer goes back and investigates and pulls out the video, and let's say the injury is, I claim I was traumatized because I was standing near a track and that train came too close. The railroad goes and pulls the locomotive video and looks and sees, well, yes, that's because you were standing on the track, and you're not supposed to stand on the track. And then when the railroad then enforces its rules about that, the employee says, oh, well, if I had never complained of my injury, you never would have investigated, and you never would have looked at that video, therefore there's a contributing factor. You know, that's the problem that railroads are dealing with under the statute, and it's a problem that we're hoping that this Court will put a stop to in this circuit. I can talk just briefly about the Halliburton case. Of course, it's a SOX case, and as I said, you don't necessarily have to try to, you know, get into whether that case was correctly decided under a different statute that has different purposes. I do think that there is some discrimination language in that statute, and so in that sense there could be at some level an inconsistency. But Halliburton was also a very unusual case, and the principal disputed issue there, the one that I think went to an embanked poll, was adverse action. And there is some discussion in the adverse action part of the opinion that certainly sounds like there was a negative intent on the part of the employer, but whether that's true or not, that case was a, what I would say is a whistleblower case in the sense that the employee had made a complaint, and the adverse action was that the employer revealed that employee's identity to his coworkers, the ones he had complained about. That's sort of inherently retaliatory, where you could see a court not spending a lot of time on this question of do we have to have some specific retaliatory motive in that kind of a case. Are you saying, let me get this straight, you said that you need to have a distinction between what's prohibited and the causation. Well, that's fine, but isn't that what the Armstrong case said? Yes, the Armstrong case does say that. So why are you saying that's still an abiding serious issue? I'm sorry? You're saying you want clarification from this court. Do you mean reinforcement or what? Well, Armstrong is the Seventh Circuit case. Oh, right. Well, that's true. Go with the Seventh Circuit. I'm sorry. I would be thrilled if you adopted the Armstrong rationale for this. I'm forgetting. Okay. Sorry. I believe that one of the comments made about the other circuits and referencing the Kudak case in particular out of the Eighth Circuit was that there's a confusion between knowledge and motive. And that was the argument that was made about Kudak until the Blackerby case when the Eighth Circuit reaffirmed. No, we said what we meant in Kudak. That wasn't just talking about knowledge. That wasn't just talking about a cat's paw theory. We mean what we said, retaliatory motive is required. We reject the language in the Third Circuit case that perhaps could be limited, but on its face is always cited as taking a different view. And they pointed out that the Third Circuit had incorrectly relied on And that's the same case that in Armstrong the Seventh Circuit said, yes, we agree that Perano case is under a very different statute, the Federal Whistleblower Protection Act statute. So we really shouldn't be applying those concepts in these other statutes. I think that I've covered the main points that I wanted to hit. So if there's no other further questions, I will be happy to save you some time. Well, I infer that you want us to rule on this issue, but didn't you alternatively argue that Epple would have been discharged anyway? We did. I mean, was that issue, that was tried to the district court, I suppose. It was tried. The judge didn't address it in his order, but certainly I would hope you don't get to this point. If you were to the point of rejecting the other arguments rather than reverse, we would ask that you meet that. And there's testimony, and actually let me give you the record citations on that point. There is testimony that the same action would have been taken, and that's record on appeal 2744 to 2745 and 3284. And it is very clear. And then there's some later testimony as well that we cite in our brief. But, you know, that's the direct testimony that, yes, this very same action would have occurred regardless of any protected conduct. And we also put on some evidence which the Kudak case and the Eighth Circuit had said was acceptable to prove that defense in terms of showing that there were, I think, in that region, 37 claimants who had reported injuries, and I think only two of those had any discipline result from it. And then the entire process, the multilevel review, was the other aspect that the Eighth Circuit pointed to in Kudak, and we also pointed to that here. And the other issue in the case that was raised, I think, in the opening brief but not addressed in the reply was this issue about the exclusion of OSHA findings. And I'll just, unless anyone has any questions, just refer you to our brief on that. And the short of it is the 1972 case has been limited by later cases because the 1972 case preceded the Federal Rules of Evidence and specifically Rule 403, which was one of the grounds on which Judge Cummings excluded that. All right. Thank you. Thank you, Your Honor. Mr. Paul. Thank you, Your Honors. Judge Ho, if I may supplement my response. I don't feel like I adequately addressed your question regarding the discrimination in the FRSA. The statute reads that the railroad employer, quote, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee. So what I'd like to, I think, try to clarify is that that language, discriminate, is referring to the other adverse employment actions. It's part of that same sentence talking about discharging, demoting. So the use of the word discriminate there is not requiring intent. It's simply showing that there are other ways, kind of like Burlington v. BNSF, a Title VII case, that retaliation can take different forms other than termination or failure to promote. And that's in our reply brief at page 5. I also wanted to say that there are cases out there where a plaintiff does show intent. And, of course, that's okay. That's one way of doing it. It's just not required. So to the extent there are cases that actually the facts support heavier evidence, that's okay, and courts often address that. It's just not a requirement. I wanted to point that out as well. With respect to the use of the OSHA findings, we would withdraw that argument. There's no reason for the court to address that. It was incorporated by the judge in the summary judgment decision, but that's quite frankly a discretionary move, and I think the courts have discretion to do that. So that's not necessary to address. So unless there's any other questions, we would ask. And I think that BNSF's arguments have shifted a bit in light of Frost. I think earlier in this case it was definitely an argument that it was a separate showing, and I think they've moved off of that, kind of going with the Heinz 57 ketchup approach, that it's just sort of in there. And that may be the direction that the Ninth Circuit went, but I think based upon Fifth Circuit precedent, it's just not a requirement that we show the discriminatory intent. In any event, the court here in its decision did, as I mentioned earlier, did require two separate showings, causation and discriminatory intent or motivation. So for that reason, we'd ask that the court remand it for the court to apply the proper causation standard and also make a finding as to BNSF's affirmative defense. Okay, thank you very much. We appreciate it.